## WILLIAM O'NEIL *vs.* R. S. TYLER.

Opinion filed Nov. 7th, 1892.

### Sale for Taxes—Adjoining Lots Assessed as One.

Where adjoining lots in a town plat were assessed together as an entirety, and valued at one lump sum, a subsequent sale of such lots for the taxes based upon such assessment must follow the description in the assessment. The lots cannot legally be sold separately, each for moiety of the tax arising from the lump valuation.

### Where Tax Deed Vacated—Judgment for Taxes.

Where, on account of irregularities connected with the tax sale, a tax deed is set aside by the court, such deed no longer possesses any evidential force, and, in order to show that the tax for which the sale was made, or any subsequent tax, was a lawful tax, the party alleging the fact must show, by common-law proof, that the steps essential to a valid tax have been taken by the officials. A regular assessment and levy must be alleged and proved in order to recover judgment, under § 1643, Comp. Laws.

### City Ordinance—Mayor Must Approve Tax Levy.

The charter of the City of Fargo, as amended in 1881, gave the mayor a veto power as to ordinances and resolutions passed by the council, and also conferred upon the "mayor and council" the power to "levy and collect taxes." An ordinance also provided that the "mayor and council" should "levy" the annual city taxes. The validity of a tax levy being in issue, the record of the proceedings of the city council showed that the council by resolution levied a tax, but no evidence was offered to show that the mayor approved of such resolution, or that he in any manner participated in or knew of the action of the council. *Held*, that the proof failed to show a valid levy. *Held*, further, that no valid levy could be made by the independent action of the council.

### Assessment Roll—Description.

A description of real estate as it appeared in the assessment roll examined, and *held* to be sufficient.

### Board of Equalization—Adjournment.

Where a board of county commissioners meets as a board of equalization on the day appointed by law, and, after organization, adjourns until the next day, subsequent adjournments from day to day by less than a quorum of such board will preserve the duration of such session.

### Assessment Roll Filed During Session of Equalizing Board.

The assessor failed to deliver the assessment roll to the auditor on the day required by law, but the board of equalization was in session upon that day, and, by adjournments from day to day, entered in the minutes, continued in session until such roll was filed, and thereafter a majority of said board

remained in session for two days, engaged in equalizing the taxes for that year. *Held*, that the taxpayers, had sufficient notice of the time of meeting of the board of equalization, and sufficient opportunity to be heard upon their assessments, notwithstanding the irregularity in filing the assessment roll.

## Yeas and Nays on Passage of City Ordinance.

Section 13 of the charter of the City of Fargo, as amended in 1881, provides "that upon the passage of all ordinances the yeas and nays shall be entered upon the record of the city council." This provision is mandatory, and it appearing that an ordinance (title 1, c. 6, of the ordinances of the City of Fargo,) was adopted in violation of said provision, and that upon its passage by the council the yeas and nays were not entered upon the record, *held*, that said ordinance was not legally adopted, and hence never became a valid ordinance. *Held*, further, that an ordinance subsequently adopted, purporting to amend a single section of such ordinance, and which could not be enforced when standing alone, is likewise null and void. ..

## Statutes Construed.

The territorial statutes embraced in §§ 1640, 1643, Comp. Laws, undertook ·to modify and regulate the practice in a variety of tax cases, including actions to "cancel" or "avoid" tax deeds. These statutes cannot be completely reconciled with each other, but the court is not at liberty to wholly ignore them, and render its decisions in such cases upon general principles only. With a view to giving the two sections some effect, § 1640 is limited to cases where the validity of the tax, in whole or in part, is ·conceded, and § 1643 is applied to other cases arising under the territorial tax laws.

*Bartholomew,* J., dissenting.

## Equitable Action to Quiet Title.

The object of this action is to quiet plaintiff's title to real estate, and to annul defendant's adverse title, and it is brought under §§ 5449, 5450, Comp. Laws. *Held* that, within the meaning of § 1643, *supra*, it is an action to "cancel" a tax deed. The plaintiff invoked the equity powers of the district court by praying for equitable relief, and that court gave such relief by its judgment annulling certain tax deeds as clouds on plaintiff's title. The action was therefore in equity, and none the less so because the plaintiff used a short form of complaint, and did not set out the nature of the cloud he was seeking to remove.

Appeal from District Court, Cass County, *McConnell,* J.

Statutory action by William O'Neil against R. S. Tyler to quiet an adverse title to real estate, which defendant claims by virtue of certain tax deeds. Judgment for plaintiff. Defendant appeals. Judgment setting aside the tax deeds is affirmed, and case remanded for further proceedings consistent with the opinion.

*Newman & Resser,* for appellant.

This is in the nature of a suit in equity and governed by the rules applicable to equitable actions, because it seeks to remove a cloud from the title and also seeks an injunction. *Clark* v. *Smith*, 13 Peters 195; *Holland* v. *Challen*, 110 U. S. 15; *Farrington* v. *N. E. Inv. Co.* 47 N. W. Rep. 191; *Lamb* v. *Farrell*, 21 Fed. Rep. 5. The fact that the statute authorizes a short form of complaint, cannot change the nature of the action. *Curtis* v. *Sutter*, 15 Cal. 260; *Brant* v. *Wheaton*, 52 Cal. 430. Plaintiff should tender amount of tax as condition precedent to suit.

State R. R. Tax Cases, 92 U. S. 575; *Nat. Bank* v. *Kimball*, 103 U. S. 732; *Pelton* v. *Bank*, 101 U. S. 143; *Cal. & O. Land Co.* v. *Gowen*, 48 Fed. Rep. 771; *Palmer* v. *Town*, 16 Mich. 176; *Merrill* v. *Humphrey*, 24 Mich. 170; *Hersey* v. *Supervisors*, 16 Wis. 198; *Hersey* v. *Supervisors*, 37 Wis. 75; *Schittler* v. *City*, 43 Wis. 48. The description must be such as to inform respondent that the land assessed is his. Blackwell on tax titles, 124, 2 Desty 56; *Hopkins* v. *Young*, 22 At. Rep. 926; *St. Peter's Church* v. *Scott County*, 12 Minn. 395; *Auguste* v. *Lawless*, 10 So. Rep. 171; *Greenwood* v. *LaSelle*, 26 N. E. Rep. 1089; *Beems* v. *Caldwell*, 9 N. E. Rep. 623; *Smith* v. *Shattuck*, 7. Pac. Rep. 335; *Taylor* v. *Wright*, 13 N. E. Rep. 529; *Jenkins* v. *McTigue*, 22 Fed. Rep. 148; *Griffin* v. *Tuttle*, 37 N. W. Rep. 167.

*J. E. Robinson*, for respondent.

Each deed shows that separate town lots were sold *en masse* for a gross sum, hence it is void on its face. 2 Desty 869, 973. *Walker* v. *Moore*, 2 Dillion 256; *Ryan* v. *Cook*, 21 Ia. 439; *Ware* v. *Thompson*, 29 Ia. 65; *Crane* v. *Randolph*, 30 Ark. 584; *Bouldin* v. *Ewert*, 63 Mo. 330. Where a city charter requires the votes to be taken by yeas and nays and to be entered on the record, and ordinance voted without that requirement is invalid. *Pontiac* v. *Oxford*, 49 Mich. 69; *Sticker* v. *Saginaw*, 22 Mich. 104, 206. In the enactment of ordinances the requirements of the statute must be strictly observed. *Blanchard* v. *Bissell*, 11 Ohio St. 301; *Elizabethtown* v. *Lefler*, 23 Ill. 90; *Barnett* v. *Newark*, 28 Ill. 62; *Herzo* v. *San Francisco*, 33 Cal. 134; *Fuller* v. *Heath*, 89 Ill. 296; *Tracy* v. *Peo*, 6 Col.

151. When by statute the mayor is a part of the law making power, his concurrence in legislative action is essential to its validity. Dillon on Municipal Corps., § 309. *Sexton* v. *Beach*, 50 Mo. 488; *Sexton* v. *St. Joseph*, 60 Mo. 153; *Irving* v. *DeVors*, 60 Mo. 625. By force of statute a county tax deed—not void on its face—is *prima facie* evidence of title. But when any material irregularity is shown then the presumption of the statute is rebutted. Then step by step the claimant must prove everything essential to the validity of his title. *Lacy* v. *Davis*, 4 Mich. 157; *Case* v. *Dean*, 16 Mich. 12; *Thompson* v. *Ware*, 43 Ia. 433; *Butler* v. *Delano*, 42 Ia. 350; *Beddleman* v. *Brook*, 28 Cal. 75; *Johnson* v. *Elwood*, 53 N. Y. 431; 2 Desty 961, 969.

WALLIN, J. This is a statutory action to quiet an adverse title to real estate. The grounds of the action are not alleged in the complaint further than to state that plaintiff is the owner of lots 12 and 13 of block 9, in Keeney & Dewitt's addition to the City of Fargo, in Cass County; that defendant wrongfully claims an estate or title to the lots adversely to the plaintiff; that the action is brought to determine such adverse claim. The prayer of the complaint is, in effect, that defendant shall quitclaim his interest in the lots to the plaintiff, or set forth by answer the nature of his adverse claim, that it may be adjudged to be void, and that defendant be restrained from asserting any claim to the lots. Defendant answered the complaint, denying each and every allegation thereof, and further set out title to the lots in himself by virtue of two certain tax deeds annexed to and made a part of the answer. One of the deeds is based upon a tax sale of the lots for taxes claimed to have been assessed against them by the taxing officials of the City of Fargo, in the year 1884, such tax deed being executed by the city treasurer pursuant to a tax sale made by him in 1885. The answer further alleges that, subsequent to such tax sale, defendant paid certain sums assessed against said lots by the city authorities as and for taxes. Referring to the other tax deed, the answer avers, in substance, that such deed was made and delivered to defendant by the county treasurer of

Cass County as the culmination of a tax sale of the lots made by the county treasurer to the defendant in October, 1887, for taxes claimed to have been assessed against the lots by the county officials of Cass County in the year 1886. The answer further states that after such sale defendant paid certain other sums as and for taxes upon the lots, which were claimed to have been assessed by the county authorities subsequent to the year 1886. Defendant further alleges that said deeds were not only regular in themselves, but were given pursuant to valid tax sales made for delinquent taxes; that the taxes for which the lots were sold were properly assessed, equalized, and levied by the proper officers of the city and county, respectively, at the proper time and in the proper manner. The affirmative matter contained in the answer was pleaded as a counterclaim, and plaintiff replied thereto, denying the whole thereof, except that the tax sales and deeds were made and delivered, and the sums alleged were paid by defendant as subsequent taxes; also that plaintiff neither paid nor tendered any of the taxes before instituting the action. The trial was had before the court, and, after findings were filed in plaintiff's favor, judgment was entered adjudging the plaintiff to be the owner of the lots, annulling the tax deeds as void, and for costs. It will suffice here to say that the trial court, for various reasons, set out in the findings, held that the alleged taxes for which the lots were sold were never lawfully assessed or levied against the lots, and for that reason the sales were illegal, and that, no taxes being lawfully assessed or levied, none need be paid or tendered preliminary to the action. A bill of exceptions was settled, and the evidence comes up with the record.

In deciding the case we shall not refer in detail to all the objections urged by plaintiff's counsel against the validity of the tax sales and tax deeds through and by which defendant claims to be the owner of the land. We are unanimously of the opinion that the tax sales were illegal sales, and that the deeds given in pursuance of such sales are invalid, and hence convey no title to the defendant. The facts upon which this conclusion rests are

undisputed, and are common to both the city and county sales.    It appears by defendant's answer, and is admitted by the plaintiff's reply, and was conceded at the trial, that the lots were struck off to the defendant at both of the tax sales in question, one at a time, for a sum bid for each as a separate parcel.   The uncontroverted testimony, consisting of the assessor's returns and tax lists, discloses the fact that in assessing the lots for the years in ques-. tion both lots (11 and 12) were grouped together as an entirety, and were valued in the aggregate at one lump sum.   The taxes were apportioned against the property upon such lump valuation. It appears affirmatively that no valuation was placed upon either lot separately, nor was a tax apportioned against either lot as a separate parcel of land.   The evidence shows that the two lots constituted plaintiff's homestead; his house resting upon both lots. Conceding, without deciding the point, that the manner of occupying the property justified an aggregate valuation such as was made, it would follow that the sale must correspond to the valuation and the apportionment of the tax.   It is well settled that, where distinct parcels of real estate are properly grouped as an entirety for valuation, and one tax is laid against the total value, the tax sale, if made, must correspond to the previous grouping and valuation of the property.   No tax collector possesses the legal authority to arbitrarily divide the sum apportioned as a tax against such aggregate valuation, and sell a separate parcel for the whole tax, or any part of the tax.   There being no tax against either lot as a separate parcel, there could lawfully be no separate tax sale of either lot.   This rule is firmly established by the authorities. Black, Tax Titles, § 123; *Kregelo* v. *Flint*, 25 Kan. 695; *Wyman* v. *Baer*, 46 Mich. 418; 9 N. W. Rep. 455; *Allen* v. *Morse*, 72 Me. 502; *Willey* v. *Scoville*, 9 Ohio 43; Welty, Assessm. § 110, and notes 1*a*, 2; Cooley, Tax'n, pp. 493, 494, and notes; *Moulton* v. *Doran*, 10 Minn. 67, (Gil. 49;) 2 Desty, Tax'n, 871, and notes.

The tax deeds being invalid for an illegality which relates only to the sales, and which does not go to the ground work of the tax, defendant contends very properly that he has a right to show

that the taxes for which the sales were made were in all respects legal and valid taxes. But, the illegality of the deeds being shown, their evidential character is lost, and they cannot be used even as *prima facie* evidence of the regularity of the proceedings upon which the validity of the taxes depends. If the taxes are valid, their validity must be made to appear by common-law proof. Each essential step in the process of laying the tax must be established by competent testimony. The burden is upon the purchaser. Black, Tax Titles, §§ 246, 247, 249. See numerous cases cited in note 1 to § 246, Id.

We will first consider the validity of the alleged tax of 1884, for which the city treasurer sold the property in 1885. At that time the amended charter of the City of Fargo, adopted in March, 1881, was in force. Among other provisions of the charter were the following: "Sec. 5. The powers hereby granted shall be exercised by the mayor and council of the City of Fargo as hereinafter set forth." "Sec. 8. The council of said City of Fargo shall consist of eight citizens of said city, being two from each ward, who shall be qualified electors of their respective wards, under the organic act of this territory, one of whom shall be elected president of the council at their first regular meeting after each annual election provided in § 9 of this act." "Sec. 13. All ordinances of the city shall be passed pursuant to such rules and regulations as the mayor and council may prescribe; *provided*, that upon the passage of all ordinances the yeas and nays shall be entered upon the record of the city council," etc. "Sec. 38. The mayor shall have power to sign or veto any ordinance or resolution passed by the city council. Any ordinance or resolution vetoed by the mayor may be passed over the veto by a vote of two-thirds of the whole number of alderman elected, notwithstanding the veto; and should the mayor neglect or refuse to sign any ordinance, or return the same with his objections in writing within ten days, the same shall take effect without his signature." Section 12 declares that the "mayor and council" of the City of Fargo "shall have power to levy and collect taxes for general

purposes." Section 4 of an ordinance not pleaded, but offered in evidence, also confines the power in express terms upon the "mayor and council" to "levy the necessary taxes" on the "first Monday of September." The answer expressly avers that the several acts pleaded by the defendant as constituting the assessment, equalization, and levy of the taxes of 1884, and embracing also the sale of plaintiff's property by the city treasurer in 1885, for such taxes, and the execution and delivery of the tax certificates and tax deed, were all and singular done and performed under and by virtue of "chapter 6 of the ordinances of the City of Fargo."

At the trial plaintiff claimed that no such ordinance existed, because the same was never legally enacted or adopted by the city council, for the reason that upon the passage of the ordinance by the council the "yeas and nays were not entered upon the record of the city council," as was required to be done by § 13 of the city charter. We think the evidence fully sustained plaintiff's contention on this point, and the trial court found it to be true, as a matter of fact, that the yeas and nays were not entered in the record of the city council upon the passage of the ordinance, and that "said record contains no entry of or concerning the passage of said ordinances, except as follows: "April 19th, 1881, council met pursuant to adjournment. Revised ordinances were accepted, and old ones repealed." Upon this record we are compelled to hold, under the authorities cited below, that the alleged ordinance was not legally passed or adopted, and hence never became a valid enactment. See 1 Dill. Mun. Corp. § 291, and cases cited in note 1. See analogous doctrine applied to legislation. Cooley, Const. Lim. (6th Ed.) 168; Suth. St. Const. § 48. Our attention is directed to the fact that an ordinance was adopted in 1884, which among other things, changes the date of selling real estate for city taxes, and fixes the rate of interest on city taxes after such taxes become delinquent at a rate specified by § 1 of the original ordinance. But this latter ordinance purports to be only an amendment of a single section of the original

ordinance, *i. e.*, § 3 of ch. 6, *supra.* Standing alone, the amendment is meaningless, and wholly incapable of enforcement. It is obvious that the amendment would not have been adopted as an independent law. Under such circumstances, the amendment must be held to be null and void. Cooley, Const. Lim. (6th Ed.) pp. 211, 212. As has been seen, the power to levy the city taxes for general purposes is, by the charter as well as by an ordinance of the city, conferred in express terms upon the "mayor and council."

The trial court found as a fact, upon sufficient evidence, that the mayor and council did not in 1884, levy any city taxes. The undisputed testimony discloses that the council met at the proper time, and that all members were present. The council by resolution in proper form then levied the taxes for 1884, as far as the council could make such levy by its separate action. But this evidence is fatally insufficient to establish the fact of a tax levy by the "mayor and council." The testimony offered, *i. e.*, the record of the proceedings of the council, refers only to the action of the council, and in no way relates to the action of the mayor. So far as the evidence discloses, the mayor never participated in the levy in any manner, and never assented to or became aware of the action of the council in the premises. Nor are we at liberty to indulge the presumption that a vital step in the tax levy was in fact taken when there was no evidence offered to show that such step was taken, and where the evidence put in to show the levy falls short of doing so. We cannot assume without proof that other and further proceedings were had. The burden to show a valid levy by the "mayor and council" was with the defendant, and he failed to show such levy. It is elementary in tax law that essential steps in laying a tax must appear by some record. Such steps cannot be shown by parol. In this case no parol evidence of the fact was offered. *Powers* v. *Larabee*, 2 N. D. 141; 49 N. W. Rep. 724. The proof offered wholly fails to show a valid levy of the city tax in question, and we therefore rule that the alleged city tax for which the lots were sold was void. A levy by the

proper officials is essential to a tax. Cooley, Tax'n, 339; 1 Desty, pp. 106, 515. Where the authority to levy is given, and the mode also prescribed, the mode must be pursued.   2 Dill. Mun. Corp. § 769.

Turning to the county tax, the respondent contends that such tax was wholly void, first, because the description of the property as found in the assessment roll for the year in question is insufficient to meet the requirements of the law.   Certain pages of the roll were put in evidence, and, among others, the printed heading at the top of the page on which the lots are described, which heading is as follows:   "Assessment Return of Taxable Property in Cass County, Dakota, for the year 1886.   Real Property. Keeney & Dewitt's Add'n."   Below this was a proper description of the lots as lots 12 and 13 of block 9.   Respondent criticises the return, for the reason that it does not appear on the page where the lots are described in the return where they are located.   It is true that such page does not disclose whether the lots are situated within the limits of Fargo or not, nor does this page indicate or state that Keeney & Dewitt's addition is an addition to Fargo. But another printed heading of a preceding page of the same return was put in evidence by the appellant as follows:   "Assessment Return of Taxable Property in Cass County, Dakota.   Real Property.   Fargo.   Original Addition."   This was the heading on page 3 of the return and descriptions of real estate continued under this head to page 11 of the return, and on page 12 the return was as follows:   "Keeney & Dewitt's Addition;" and under the last mentioned heading the descriptions continued until page 19, and embraced the property in question.   From all of these pages of the return, when read together and fairly construed, we are compelled to hold that the description of the property, though not to be commended, is yet a substantial description, and one which fulfills the requirements of the law.   We arrive at this conclusion without reference to parol evidence, which showed that the only Keeney & Dewitt's addition in Cass County was an addition to Fargo.   We therefore rule that the property was sufficiently

described and valued by the assessor in the year 1886. As to what constitutes a sufficient description of real estate in tax cases, see Cooley, Tax'n, 404, 408.

Respondent also claims that for certain reasons, not necessary to detail, the levy of taxes in in 1886 was irregular and void. We have carefully considered the points raised, and are clear that the taxes were levied in substantial conformity to law, and hence hold that the levy was sufficient.

The trial court found as follows: "That on or before the first Monday of July, in said year, the county assessor of Cass County did not make and deliver to the county clerk of said county an assessment roll; that no such roll was made and sworn to until the 12th day of July, 1886; that in the year 1886, for the purpose of equalizing and correcting the assessment roll, and as a board of equalization, the county commissioners of Cass County did not hold a session of two days, or at any time, commencing on the first Monday or the first Tuesday of July, in said year; that, as shown by the record of said commissioners, in the year 1886, they did not meet as a board of equalization until the Tuesday after the first Monday in July, and then that said board only met to adjourn, and that, without a quorum, the board adjourned from day to day until the 13th day of July, 1886; that on said day the board adjourned until the 14th day of July, at 10 o'clock A. M.; and that on the 14th day of July, 1886; the board of county commissioners of Cass County did not meet as a board of equalization, or otherwise, until 2 o'clock P. M." The undisputed testimony shows that the board of equalization met on the Tuesday next after the first Monday of July, Monday being the 4th, and a legal holiday. The board was composed of five members, and a quorum was present. The board organized, and at once adjourned until the next day, Wednesday, at 10 A. M. On Wednesday the journal entries as follows: "Wednesday, July 7th, 1886. Board of equalization met at 10 o'clock A. M. Present, Messrs. Gill and Kissner. No quorum being present, board adjourned till 10 o'clock A. M. tomorrow." No quorum being present on the

following Thursday, Friday, Saturday and Monday, an entry was made in the journal substantially like that made for Wednesday, as above quoted. On Tuesday and Wednesday, July, 13th and 14th, a quorum was present, and on each of the last mentioned days the board was engaged in equalizing the taxes of 1886, a verified tax roll having been completed on the 12th of July, and delivered to the auditor.

The questions of law arising upon the findings and the undisputed evidence and facts are of serious importance, whether considered with reference to the collection of the public revenues or with reference to the constitutional and statutory rights of individual taxpayers; nor do the discordant decisions and apparently endless discussions of elementary writers afford much assistance to the court in its investigations of the different points presented. The principal questions connected with the meeting of the board are two in number, and are as follows: *First.* Did the board of equalization in Cass County in the year in question meet upon the proper day, and hold a session of not less than two days, as the statute in force at the time required it to do? *Second.* When the authenticated assessment roll is not delivered to the auditor on or before the first Monday in July, as the statute directed shall be done, but is delivered before the board of equalization adjourns, and after its delivery the board remains in session for a period of two days, and while in session actually equalizes the taxes, is such delay in the delivery of the roll an irregularity in the process of assessing and equalizing the taxes that will render the taxes of that year void?

Taking up the questions in their order, it is manifestly true that the board of equalization did meet on the day designated by law for their first meeting. The statute names the first Monday of July, but that year it happened that Monday was July 4th. This day being a legal holiday, the statute expressly authorizes the postponement of secular business to be done on such day until the next business day. Comp. Laws, § 4752. The board met for the first time on the Tuesday next following the first Monday of

July, and this, as we have seen, was strictly regular, under the statute. There was a quorum present at the first meeting, and hence the adjournment until 10 A. M. the next day was also strictly regular. But the successive adjournments from day to day, which were made by only two members,—less than a quorum,— are challenged as illegal and void. If such adjournments had no validity, it follows, logically and legally, that the board was not lawfully assembled when it did actually meet and discharge its functions on Tuesday and Wednesday, July 13th and 14th, and hence, on this supposition, there was no session of "not less than two days" that year, as the statute required. Comp. Laws, § 1584.

We have been unable to find a decided case in point upon the question presented, *i. e.*, as to the validity of no quorum adjournments when such adjournments are made from day to day as a means of preserving the life of meetings required by law to be held by the governing officials of public corporations. But this court will take notice judicially that the practice of making such adjournments extensively pervades in the United States, and that it is not limited to such bodies as congress and state legislatures, where it has the express sanction of organic law but obtains in city councils and in town, county, and school district boards, where there is no express provision of law authorizing it. Cush. Leg. Law & Pr. Assem. (2d Ed.) §§ 254, 255. We think so valuable a rule, as applied to public corporations, at least should be preserved, particularly as its denial would operate disastrously to the public interests in many cases, as would be true with respect to meetings of the only board before which the taxpayer can be heard upon the matter of the valuation of his property for taxation. Our conclusion is that the board met at the proper time, and held a session of not less than two days in the year 1886.

This brings us to another question. The statute in force, (Comp. Laws, § 1582,) required the assessors to return their assessment rolls to the county clerks on or before the first Monday of July of each year. In 1886 the return was not

made in Cass County until July 12th, or more than one week after the day fixed by statute. Is this a fatal irregularity? If the board had adjourned without day prior to the return of the roll, a very different question would arise. In such a case there could be no equalization or adjustment of the taxes, and no opportunity would be given to the taxpayer to present any grievances which might arise upon the return to the only tribunal provided by law to hear and dermine such grievances. In the supposed case a majority of this court would hold, for reasons fully stated in *Powers* v. *Larabee*, 2 N. D. 141, 49 N. W. Rep. 724, that the taxes levied in that year would be invalid for any purpose. But the record before us presents no such facts. Here the roll was delivered to the clerk prior to the adjournment of the board, and after the roll was returned the board remained in session for two days, and discharged its functions as a board of equalization. This shows that the taxpayer was not deprived of his opportunity to be heard upon matters arising upon the return. Authorities can be found which announce the broad doctrine that in a case where the assessment roll has not been returned to the proper office on or before the date designated by statute for its return that the taxpayers have no legal notice or knowledge when the return will be delivered to the proper official, and hence are not bound to give the matter further attention. But, while we should not hesitate to apply this doctrine in a proper case, we are of opinion that it should not be applied to a case where the tribunal of review and equalization is still sitting at the time the roll is returned, and had, by adjournments, kept alive a session which was initiated by a meeting upon the date designated for its first meeting. The fact that the board was still in session when the roll was returned, and had by lawful adjournments continued its session from the first day of its meeting,—the day stated in the law for such meeting,— was a fact which was advertised to the public by entries made in the official journal of its proceedings, to which taxpayers have access. Such board has no lawful business other than such business as is vitally connected with the assessor's return, and hence,

so long as the board continued in session, it was notice to the public that its duties would be performed when and as soon as the return should come before them. Under such circumstances, we are quite clear that the public had practically notice and an opportunity to be heard before the board in 1886 despite the fact that the roll was not returned upon or before the date required by statute for its return to the county clerk. We conclude that the tax of 1886 was valid as a tax, and none the less so because the sales and deeds were illegal and void on account of certain irregularities which do not go to the ground work of the tax.

We here encounter a point arising under our very peculiar and very confusing statutes inherited from territorial times. Apellant contends that the action was not lawfully commenced, and must be dismissed because the taxes and interest were neither paid nor tendered before the suit was brought; citing § 1640 of the Comp. Laws in support of this position. This section, among other things provides: "No action shall be commenced by the former owner or owners of lands * * * to recover possession of lands which have been sold and conveyed by deed for nonpayment of taxes, or to avoid such deed, * * * until all taxes, interest and penalties, costs, and expenses shall be paid or tendered by the parties commencing such action." A liberal construction of this section alone would oblige us to dismiss this action, for the reason that the tax of 1886 was neither paid nor tendered before suit; but we do not feel justified in putting such a construction upon the section, in view of the fact, especially, that § 1643 of the same statutes contains provisions in direct conflict with those quoted above, and the latter statute leads to a widely different result. Section 1643 provides, among other things, that in an action "to recover the possession or title of any property, real or personal, sold for taxes, or to invalidate or cancel any deed or grant thereof for taxes, * * * the true and just amount of taxes due upon such property or by such person must be ascertained, and judgment must be rendered and given therefor against the taxpayer." A comparison shows that the provisions of the statute above

quoted are in part contradictory of each other. The former requires payment or tender of taxes as a condition precedent to an action to "avoid" a tax deed; the latter provides that in an action "to invalidate or cancel" such deed a judgment shall be rendered for "the true and just amount of taxes due upon such property." These provisions cannot be harmonized entirely, and we are convinced that it would be a harsh and unreasonable interpretation of the language used to hold that § 1640 alone must govern. To do so would not only compel the plaintiff, who has a just cause of action upon the merits, to go out of court without the relief he is seeking, but would likewise imply that § 1643 is meaningless, and must be ignored. We are convinced that a less rigid construction would be, on the whole, more conducive to justice, and more in accord with sound legal principles. We therefore conclude that the terms of § 1640 of the statute above quoted must be confined to cases where the plaintiff concedes the validity of the tax, or a part thereof, and that neither tender nor payment will be required in suits where the legality of the entire tax is controverted in good faith. The powers of the court, trammeled as they are by crude and self-contradictory legislation, cannot be put forth as fully as they might be done by a court of equity when unfettered by legislation. The most that can be done, while aiming to do justice, is to give such a construction to discordant statutes as will tend to give some effect to their provisions, and not to annul them entirely. With these objects in view, we must overrule this point, and refuse to dismiss the action.

Respondent's counsel contends, however, that neither of the sections above quoted have any application to this case, because, as he argues, the action is not in strictness an action to either "cancel" or "avoid" a tax deed, and contends that the action is statutory in its nature and origin, and is nothing more than a challenge to the defendant to bring forward his claim, or be debarred from any interest or title to the lots in question. This suggests a wide field for discussion, upon which we do not deem

it necessary to enter further than to cite the cases below, and say that in our judgement this action is essentially equitable in character; and, while the facts are not set out in the complaint which show a cloud upon plaintiff's title, yet it is still true that the record shows such a cloud, and the judgement below removes the cloud. Plaintiff being in possession, and a cloud being cast upon his title by the tax deeds, an action would lie in equity to remove the cloud, and no court other than a court of equity could remove the cloud by a decree. We think that the fact that plaintiff has availed himself of the practice in other states, and has not set out in the complaint the facts showing a cloud upon his title, does not alter the essential objects of the suit. Plaintiff cannot, on the one hand, invoke equitable relief, and avail himself of the powers of a court of equity, and, on the other hand, escape the consequences of being in a court of equity. Besides, the two sections of the statute above quoted apply alike to actions at law and suits in equity. The peculiar nature of the so-called statutory action is fully considered in the cases cited below. *More* v. *Steinbach*, 127 U. S. 70; 8 Sup. Ct. Rep. 1067; *Whitehead* v. *Shattuck*, 138 U. S. 146; 11 Sup. Ct. Rep. 276; *Holland* v. *Challen*, 110 U. S. 15; 3 Sup. Ct. Rep. 495.

Appellant's counsel further contends that plaintiff cannot invoke the powers of a court of equity in his behalf, becase, as counsel argues, he has not done equity by offering to pay his proportional share of the public burdens. Counsel claims that, if no valid taxes have been assessed or levied against the lots, still a court of equity would, as a matter of conscience, refuse to remove the cloud until plaintiff had first tendered payment of his proportional share of the public burdens, which should have been assessed as taxes, but which where not assessed. This rule seems to have the sanction of some courts, while other courts have refused to apply it. We cannot adopt the doctrine, not only because we are governed by statutes which are designed to regulate the practice in tax cases, but, on principle, this court is opposed to the theory that a taxpayer should, especially where the collection of the

revenue. is not involved, as a condition of relief, be forced to have his taxes assessed and levied by a court in lieu of having them assessed and levied by other officers, who are familiar with the subject matter, and who are especially appointed by law to assess and levy the taxes of all citizens. We adhere to the language used in the opinion in *Powers* v. *Larabee, supra*: "It is, in a broad sense, a moral obligation, resting upon every taxpayer, to pay a fair and equal tax upon his property. Such obligation, however, does not become legal and enforceable in the courts unless the tax is a substantially legal one;" and also quote with approval what is said by the Supreme Court of Minnesota, in *Barber* v. *Evans*, 27 Minn. 92; 6 N. W. Rep. 445; wherein the court says, at p. 96, 27 Minn., and at p. 448, 6 N. W. Rep.: "In respect to the suggestion that the taxes in this case, though not legal, were such as the owner ought equitably to have paid to the state, it is sufficient to say that no legal or equitable liability can arise in respect to the payment of any tax not founded upon a fair, valid assessment and levy, made in the manner provided by law. In the absence of any such assessment and levy, the owner has no means of ascertaining what sum he ought to pay in respect of any piece of property, and his just share of the public burden; and, under the laws in force governing this case, the courts have no power to make the requisite assessment and apportionment of the tax." See, also, *Plumer* v. *Board*, 46 Wis. 164; 50 N. W. Rep. 416. It follows, from what has been said, that the judgment of the court below setting aside the tax deeds, and for costs, was proper as far as it went, and to that extent it must be affirmed.

But defendant now claims that the judgment falls short of meeting the requirements of § 1643 of the statutes, and should be modified, so as to give judgment in favor of defendant for the "true and just amount of taxes against the property.". The principle contention in the court below and in this court turned upon the title, both parties claiming ownership, and defendant demanding that the action should be dismissed, and that the title be confirmed in him. A rehearing being granted, the attention of the

court is directed more particularly to the state of the pleadings with reference to defendant's claim for judgment against the plaintiff for the "true and just amount of taxes," under § 1643, *supra.* The answer alleges, in substance, that, in addition to the amounts paid by defendant at the tax sales for the taxes of 1884 and 1886, respectively, (and concerning the regularity of which taxes issue is fully tendered by the answer,) defendant has paid taxes on the lots as follows: That defendant paid the taxes, stating the amounts, to the county treasurer for the year 1887, and paid the taxes to the city treasurer, stating the amounts, for the years 1885 and 1886. At the trial plaintiff admitted "that the defendant paid taxes on the premises described in the complaint, subsequent to the sale of said premises to him, the following sums, to-wit." Then follow the amounts as alleged in the answer. Upon these averments of the answer and the plaintiff's admissions at the trial the question arises whether the court below should, without proof, have given judgment for such amounts paid, or for any amounts. A majority of this court is of the opinion that this question must be answered in the negative. The averments of the answer amount to this, *i. e.,* the defendant paid the subsequent taxes for certain years, and plaintiff admits that the sums were paid as taxes. But the District Court is directed by § 1643 to "ascertain the true and just amount of taxes." This language compels the examination of the tax records with a view of ascertaining whether an alleged tax was assessed and levied. The mere payment—and no more is alleged or admitted here—does not suffice to establish the validity of the tax. *Miller* v. *Hurford,* (Neb.) 12 N. W. Rep. 832; *Brown* v. *Corbin,* 40 Minn. 508; 42 N. W. Rep. 481; *Weimer* v. *Porter,* 42 Mich. 569; 4 N. W. Rep. 306.

Counsel calls attention to the Farrington case, 1 N. D. 102, 45 N. W. Rep. 191, where a majority of this court say, at p. 120, 1 N. D., and p. 197, 45 N. W. Rep.: "Said section is mandatory upon the court, and it becomes its duty to enter up judgment for the amount of the legal tax, and such judgment in no manner

N. D. R.—5.

depends upon the request of either party to the action." A
majority of this court is of the opinion that the language quoted
must be confined to the facts of the case in which it was used. In
that case there were no subsequent taxes considered by the court,
and the legal validity of all the taxes in question was put in issue
by proper averments, and was fully litigated at the trial. The
court say, on the same page of the opinion: "It was the duty of
the trial court, under the evidence, to have entered judgment." The
difference between the two cases is apparent. In the case at bar
there is no averment alleging the validity of the subsequent taxes,
or that the same were ever assessed or levied by any one. Nor
was there any evidence at the trial tending to show that any
subsequent tax paid by defendant was ever levied or assessed.
This court is of the opinion that it would be a dangerous prece-
dent and one subversive of established principles, to hold that the
mere fact of payment will suffice to show that the sum paid
represents the "true and just amount" of a tax, and hence will
suffice to warrant a trial court in entering judgment for such
amount. Under established rules of pleading and evidence, the
party seeking judgment must allege and prove all facts essential
to a recovery. In this case defendant is seeking a judgment. In
California a statute allowed an action to be instituted to recover
a delinquent tax. Under this statute the courts of that state
uniformly have held that all facts essential to a tax, including
assessment and ley, must be alleged in the complaint. In a
recent case brought under the statute, *People* v. *Railroad Co.*, (Cal.)
23 Pac. Rep. 303, a demurrer to the complaint was sustained,
because material facts were omitted. Among other points made
is the following: "An averment of indebtedness for taxes, with-
out an avernant that any taxes were levied on defendent or his
property, or, if levied, when, where, and by whom the levy was
made, or whether the taxes were based on the assessment men-
tioned above, or that there are any taxes against defendant delin-
quent or unpaid, is insufficient." See, also, *People* v. *Cone*, 48 Cal.
427; 2 Desty, Tax'n, 712. The rule stated by these authorities is

clearly to the effect that in statutory actions to foreclose the lien of a tax, or to recover judgment for a delinquent tax, the complaint must be governed by the ordinary rules of pleading under the code. It must state the material facts, and, among such, is the fact of a valid assessment and levy. This court is wholly unable to discover any difference in principle between the case of a plaintiff who, under a statute brings an action to foreclose a tax lien, or to recover a judgment for a delinquent tax and the case of a defendant who seeks, under § 1643, to recover judgment for taxes in an action brought to avoid a tax deed. We think that the legislature did not intend in passing § 1643 to inaugurate any new rules of ·pleading, practice, or evidence to govern the cases brought under that section. Tested by ordinary rules, the answer is fatally defective. It alleges payment of subsequent taxes, but omits to allege that such taxes were ever assessed or levied. But, upon proper averments in the answer, issue was joined upon the legality of the taxes upon which the tax sales were made. We have held that the county tax of 1886, for which the sale was made, is a valid tax, for that the defendant is entitled to judgment for such tax, with interest and penalty, as provided by the statute. See Farrington case, *supra.* Also *Everett v. Beebee*, 37 Iowa, 452. Inasmuch as further proceedings in the court below have become necessary, we have concluded to direct that the defendant, at his election, may apply to the District Court for leave to amend his answer by inserting therein averments of fact necessary to show that since the county tax sale he has paid legal county taxes against the lots in question. We have already said that the city tax for 1884, on which the sale is made is a void tax. But leave is given to the defendant to allege, at his election, in his answer the facts necessary to show that since the sale defendant has paid valid city taxes on the lots. If, after a hearing had upon issues made by an amended answer, it shall appear to the District Court that, in addition to the tax, interest, and penalty due on the tax of 1886, other valid county or city taxes have been paid by the defendant, the same shall be included in the amount to be

recovered by defendant. We have held that title 1, ch. 6, of the city ordinances, and the attempted amendment of § 3 thereof, never became valid, and hence cannot be resorted to in computing interest on city taxes, if such are found to exist. If no valid ordinance is shown at the hearing fixing the rate of interest, then defendant shall recover 7 per cent. on amounts paid in discharge of valid city taxes assessed since the tax sale, and paid by the defendant to the city treasurer. Under § 5193, Comp. Laws, we have discretion in modifying the judgment of the court below with respect to the costs and disbursements incurred in this court, and in the present case we have decided to allow costs and disbursements to neither party and the court below will not give judgment for costs or disbursements incurred in this court. The court below will take further proceedings in harmony with the views expressed in this opinion.

CORLISS, C. J., concurs.

BARTHOLOMEW, J., (*dissenting.*) I am unable to assent to that portion of the foregoing opinion which limits the construction given to § 1643, Comp. Laws, in *Farrington* v. *Investment Co.*, 1 N. D. 102, 45 N. W. Rep. 191, and *Bode* v. *Same*, 1 N. D. 121, 42 N. W. Rep. 658, and 45 N. W. Rep. 197, to the particular facts of those cases. I am also of opinion that, under the pleadings and admissions in the case, and for the purpose of a money judgment for taxes under said section, the legality of the subsequent taxes stands admitted. In all other respects I concur in the opinion written by Justice WALLIN.