DANSBY v. WEEKS.

4-5700 135 S. W. 2d 62

Opinion delivered December 11, 1939.

 

*Hal B. Mixon,* for appellant.

*Norton & Butler,* for appellee.

HOLT, J. Appellant, Ellsworth Dansby, brought suit in the Lee chancery court against appellee, R. R. Weeks, to quiet his title to certain lands hereinafter described. The prayer of his complaint was for the cancellation of certain tax deeds issued to appellee as clouds upon appellant's title to said lands and that his title be quieted as against any claims of appellee.

Appellant alleged in his complaint that the sale of the land to the state of Arkansas for the 1930 taxes was void for a number of reasons, among them being: (a) That said lands were sold for taxes not assessed in any form authorized by law; and (b) The description of said land as contained in the said tax deed and decree of confirmation and foreclosure was so vague and indefinite as to render such proceedings void.

Appellee answered asserting title to the lands by virtue of a deed from the Commissioner of State Lands dated March 11, 1937, based upon a sale and forfeiture of said lands to the state of Arkansas for the delinquent 1930 taxes and also by virtue of a conveyance on January 3, 1938, from the Board of Commissioners of the St. Francis Levee District based upon a decree of foreclosure rendered May 3, 1935, in the Lee chancery court for delinquent levee taxes, and further pleaded a decree of the Lee chancery court confirming the title of the state to said lands on November 16, 1936, under authority of Act 119 of 1935.

Appellant, Maude Russell, intervened claiming an interest in the lands.

The cause was tried before the court below on an agreed statement of facts, which we set out as follows:

"1. On the............day of.........................., 1929, Taylor Dansby, the then owner of the lands herein involved, died intestate in Lee county, Arkansas, leaving surviving him the plaintiffs, Ellsworth Dansby and Maude Russell, two of his heirs at law; on the............day of........................, 1930, a decree was rendered by the chancery court of Lee county, Arkansas, in an action for partition of the lands here involved, in which all the heirs of Taylor Dansby were parties; that by the terms of said decree, said plaintiffs became the holders of the title to said lands by the following description:

"South of river, the north half of the southeast quarter of section two; and the north six acres of the south half of southeast quarter of section two (2), township three north (3N), range four east (4E), 68.93 acres.

"2. The official record of the assessment of lands in Lee county, Arkansas, for the year 1930 shows the fractional southeast quarter of section 2, township 3 north, range 4 east, assessed as 154.44 acres with a valuation of $3,000. No other assessment of any part of the southeast quarter of section 2 is shown by said record; nor was any other assessment of said southeast quarter of section 2 for taxes of 1930 made at any time by the county assessor of Lee county, Arkansas.

"3. On the real estate tax book for the year 1930, the description, acreage and valuation of the said tract of land was, until June 3, 1931, the same as upon the assessment record as shown in paragraph (2) above. On the tax book the name of the owner of this tract, the description acreage and assessed value, taxes, etc., were originally, and until June 3, 1931, as shown upon a copy of the tax record herein exhibited as Exhibit 'A' except that, until the third day of June, 1931, no line had been drawn through the acreage, assessed value, or taxes, nor had any change been made in the figures in any of these columns. Until the said third day of June, 1931, this was the only entry of any part of fractional southeast quarter of section two (2) upon the tax book.

"4. On the 11th day of May, 1931, the collector of Lee county filed with the county clerk of Lee county his

verified delinquent list for the taxes of 1930 showing the fractional southeast quarter of section two, township 3 north, range 4 east, 154.44 acres, delinquent in the amount of $101.75. At some later date, the county clerk caused the said delinquent list, and the affidavit of the collector and the clerk's certificate of the filing thereof, to be recorded at pages 265 to and including 292 of Vol. 'A' of the record of delinquent lands in his office and, upon this record, the total of taxes, penalty and costs for this tract is $112.77.

"5. On June 3, 1931, Belle Dansby, by an agent, made application to pay the 1930 taxes on the south 74 acres of the south half of the southeast quarter of section two (2) and, on the said third day of June, 1931, the county clerk entered upon the 1930 real estate tax books an assessment of this tract in the name 'Dansby, Belle,' with acreage, assessed value, number of school district, and rate of school tax, and total taxes of $50.85, all as shown upon Exhibit 'A' hereto attached, and at the same time, the said county clerk drew lines through the acreage, assessed value, and taxes in the preceding assessment on Exhibit 'A' and inserted new figures as indicated for acreage, assessed value and taxes. At the same time, taxes were paid for the said Belle Dansby, $50.85, upon the tract thus assessed to her, and the collector issued his receipt, No. 2262, for such payment upon the south 74 acres of the south half of the southeast quarter.

"Exhibit 'A' is a copy of a page from the 1930 tax book showing alterations made by the county clerk in the assessment and extension of taxes against the real estate. The exhibit discloses that the fractional southeast quarter, section 2 appears on the tax books with the acreage changed from 154.44 acres to 80 acres; the valuation of $3,000 altered to $1,500; and the total taxes changed from $101.75 to $50.85. The exhibit further shows payment of taxes on June 3, 1931, on the balance of the land in that quarter section, after alteration, at the same valuation.

"6. The county clerk's record of sales for taxes of 1930 shows the 'fractional southeast quarter of section two, township 3 north, range 4 east, 80 acres,' sold to the state of Arkansas on the eighth day of June, 1931, for taxes, penalty and cost in the sum of $56.83. There is nothing of record to show when this list was recorded except as shown by the clerk's certificate thereto attached, which is as follows:

"'State of Arkansas, county of Lee, I, S. C. Langston, county court clerk, within and for the state and county aforesaid, do hereby certify that the foregoing pages numbered from 33 to 107, both inclusive, contain a true list of the several tracts, lots and parts of lots sold to the state of Arkansas on June 8, 1931, for taxes for the year 1930. Witness my hand and seal this 22nd day of June, 1931. (Signed) S. C. Langston, county clerk.'

"7. No certificate of the publication of the list of delinquent lands for the taxes of 1930 is attached to the delinquent record nor does any such certificate appear of record in Lee county, Arkansas.

"8. The lands sold in 1931 for nonpayment of 1930 state and county taxes were sold to the state *en masse*, no person being present desiring to bid for any tract upon the list.

"9. The clerk's certificate of forfeiture to the state for the taxes of 1930, made April 18, 1935, includes a tract of ................... described as 'fractional southeast quarter, section 2, township 3 north, range 4 east, 80 acres.'

"10. (We think the recitals in this paragraph immaterial here.)

"11. That on May 3, 1935, the chancery court of Lee county, Arkansas, rendered a decree foreclosing against these lands the lien of the St. Francis Levee District for taxes due it on these lands for the years 1931, 1932, and 1933; that at the sale held in pursuance of the decree, November 23, 1935, the district was the purchaser; that the said sale was confirmed by the court

January 17, 1936, but no commissioner's deed was ever issued and delivered to the said district; that the St. Francis Levee District conveyed the lands to R. R. Weeks by deed dated January 3, 1938.

"12. That on November 16, 1936, decree was rendered in this court in the case of *State of Arkansas*, plaintiff, v. *Delinquent Lands*, defendants, No. 5900, quieting and confirming the title of the state of Arkansas to the lands herein described, including 'fractional southeast quarter, section 2, township 3 north, range 4 east, 80 acres,' as having been forfeited for taxes of the year 1930, said decree appearing at page 126 *et seq*. of Volume 'M' of the chancery records of Lee county; a copy of said decree in so far as it affects the lands in said southeast quarter of section 2, being attached hereto. The said confirmation suit was brought under act 119 of the Acts of 1935.

"13. That the southeast quarter of section 2, township 3 north, range 4 east, contains 154.44 acres according to the G. L. O. maps."

It will thus be seen from the above stipulation that the eighty acres claimed by appellee, Weeks, and to which he seeks to quiet title is described throughout this litigation as the fractional southeast quarter of section 2, township 3 north, range 4 east, and is the identical description used by the county assessor of Lee county in describing 154.44 acres with an assessed valuation placed thereon of $3,000 with taxes on the said 154.44 acres in the sum of $101.75.

It is undisputed that the entire fractional southeast quarter of section 2 was regularly assessed, certified as delinquent and so advertised to be sold on June 8, 1931, and in all these proceedings the lands were described as containing 154.44 acres valued at $3,000 with total taxes of $101.75 assessed.

It is also undisputed that on June 3, 1931, after the collector had closed his books, certified his delinquent list and after the clerk had published notice of sale to be held on June 8, 1931, the clerk wrote on the same page

of the tax books the words and figures which appellants insist amounted to an assessment of the 74 acres of the south half in the name of appellant, Belle Dansby, at a valuation of $1,500 with taxes amounting to $50.85, and at the time the clerk drew his pen across the acreage, valuation and amount of taxes in the regular assessment of the fractional southeast quarter of section 2, and entered new figures to show 80 acres assessed at $1,500 with taxes at $50.85, but did not, however, make any change in the description which remained "fractional southeast quarter of section 2."

At the same time the collector assumed to receive payment of $50.85 from Belle Dansby and issued to her receipt therefor showing she had paid this amount as taxes on the south 74 acres. These acts on the part of the clerk and collector on June 3, 1931, appellant claims, made the assessment of the fractional southeast quarter of section 2 absolutely void.

Subsequently, as advertised, the property under the description fractional southeast quarter of section 2 was sold to the state, using 80 acres as the area and $50.85 as the delinquent taxes.

On March 11, 1937, the state of Arkansas conveyed its title to appellee, R. R. Weeks, by the same description, that is the entire fractional southeast quarter of section 2, containing 80 acres.

Since appellant did not file his suit herein until more than 12 months after the decree of confirmation, he concedes that the judgment of the lower court must be affirmed unless the defects existing in the sale for 1930 state and county taxes were of such a nature that they could not be cured by the confirmation decree of November 16, 1936, under the act 119 of 1935.

We have in former decisions of this court treated the provisions of act 119 of 1935 as curative in their effect holding that its purpose is to cure all defects in a sale not related to the power to sell.

In the recent case of *Fuller* v. *Wilkinson*, 198 Ark. 102, 128 S. W. 2d 251, this court said: "We think the pur-

pose of this act 119 and of the decree of confirmation rendered pursuant to its provisions, was to cure any and all defects in the sale not related to the power to sell, and that it was beyond the prerogative of the Legislature to supply this lack of power, and that the taxing officers were unauthorized to sell land for taxes which were not chargeable against the land. We think this is the effect of the opinion of this court in *Radcliffe* v. *Scruggs*, 46 Ark. 96.''

In Cooley on Taxation, 4th Edition, § 1590, in considering the effect of curative legislation on tax sales, it is said: ''One very precise limit to the power to cure these proceedings is this: they cannot be cured when there was a lack of jurisdiction to take them. Curative laws may heal irregularities in an action, but they cannot cure a want of authority to act at all.''

It is a well-settled principle of law that a tax on land to be valid must be properly assessed. As was said by this court in *Vandergrift* v. *Lowery*, 195 Ark. 257, 111 S. W. 2d 510: ''We think it must appear to every student of taxes or revenue measures that every tax must be assessed in some form authorized by law before it becomes a legal charge upon the land.''

In the instant case the county clerk of Lee county, without authority or power, undertook to divide the description, assessment and extension of taxes, as assessed by the proper officials on the tax records, against the fractional southeast quarter of section 2, which described 154.44 acres into two tracts, and assessed and extended 1930 taxes against the Belle Dansby 74 acres in the amount of $50.85 on a valuation of $1,500 and accepted payment therefor. At the same time the county clerk assessed taxes against the balance of this land in the fractional southeast quarter of section 2 at a valuation of $1,500 and extended 1930 taxes against appellant, Ellsworth Dansby's land in the sum of $50.85.

Five days later on June 8, 1931, the collector sold appellant's land under the description of fractional southeast quarter of section 2—80 acres—to the state of

Arkansas for $56.83 being the tax, penalty and costs extended upon the assessment made by the county clerk.

In due course this land was certified to the state and the sale confirmed, and sold by the Land Commissioner to appellee, Weeks, for $81.

A similar situation to that presented in the instant case obtained in *Bonner* v. *Board of Directors,* 77 Ark. 519, 92 S. W. 1124, where the tax collector accepted payment on a portion of the land in question and permitted the balance to be sold for taxes extended on his own valuation. This court in holding the sale void for want of power, said: "The assessor only is authorized to make the assessment. The south halves of sections 34 and 35 were each assessed as a whole. The value of no particular tract was fixed and, from the assessment, it could not be ascertained. One part may be worth more than another. For the purpose of taxation, they could not be subdivided except by reassessment. The offer of the north half of the south half of the sections as separate tracts for sale was without authority and the sale was void."

The principles announced in the Bonner Case were reaffirmed in *Fordyce* v. *Vickers,* 105 Ark. 697, 150 S. W. 2d 402; Id., 99 Ark. 500, 138 S. W. 1010.

It will be noted that the court in these cases held the sale void not for irregularities but for lack of power to sell.

The general rule is well stated in *O'Neil* v. *Tyler* 3 N. Dak. 47, 53 N. W. 434, wherein the court said: "It is well settled that, where distinct parcels of real estate are properly grouped as an entirety for valuation, and one tax is laid against the total value, the tax sale, if made, must correspond to the previous grouping and valuation of the property. No tax collector possesses the legal authority to divide arbitrarily the sum apportioned as a tax against such aggregate valuation, and sell a separate parcel for the whole tax, or any part of the tax. There being no tax against either lot as a separate parcel, there could lawfully be no separate tax sale

of either lot. This rule is firmly established by the authorities. (Citing cases.)''

In the instant case the description under which the 80 acres was sold to appellee, Weeks, amounted to no description, therefore, since nothing was described nothing was sold, and the sale was absolutely void.

In *Sutton* v. *Lee,* 181 Ark. 914, 918, 28 S. W. 2d 697, this court said: ''In the instant case the sale was unauthorized because the description of the land in the assessment and all proceedings involved was insufficient to identify it. It amounted to no description at all. . . . The state acquired no title to the real estate in controversy in the instant case as the assessment and forfeiture were void from the want of description by which same might be located.''

It is our view, therefore, that the appellants' contention that the confirmation decree did not cure or supply the lack of power to make the sale for the 1930 state and county taxes because of the erroneous assessment and lack of description, must be sustained.

For the errors indicated, the decree is reversed, and the cause remanded with directions to grant the relief prayed for.