4-6230                                                   148 S. W. 2d 155

Opinion delivered March 3, 1941.

*Arthur Sneed,* for appellant.

*Syd Reagan, Ira C. Langley* and *E. G. Ward,* for appellee.

Smith, J. Appellees owned a lot, of irregular shape, containing 1.71 acres, in the town of Rector, which was not a part of the town as originally surveyed and platted. For many years it was described on the tax books as ''Part South Half Northwest Quarter Section 23, T. 19 N., R. 7 E.,'' and the taxes were assessed and paid under that description. None of the owners of the land lived in Rector, and the owner, Miss Vestal Wood who paid

the taxes, resided in El Dorado. There had been a forfeiture and sale to the state through failure to pay the taxes when due, and a redemption was effected through correspondence with the county clerk. In a letter remitting a check to redeem, inquiry was made as to the due date of current taxes, and Miss Wood was advised that they would be due February 15, 1936. Miss Wood sent the clerk of the county court a check for $41.45, but was advised that "Your taxes for 1935 is $42 instead of $41.45, the bond rate in this county is a little higher and that makes the difference. Send 55c more and that will pay 1935 tax." The clerk, in this letter, further advised Miss Wood that "This property was surveyed last year and was put in lots. Your receipt for this year will call for lots 5, 6 and 7, S½, NW, Laffler's Survey to Rector." This unsurveyed addition to the town had been surveyed by Laffler, the county surveyor, and by the survey was divided into lots; but the clerk was in error in saying that Miss Wood's land had been numbered lots 5, 6 and 7, according to the survey. Those were lots belonging to another person of the same name. Miss Wood's lots were numbered 25 and 26, according to the survey. She knew nothing of the survey, and did not know the number assigned to her lots. The clerk took the money intending to pay the taxes on lots 25 and 26, and paid the taxes for Miss Wood on lots 5, 6 and 7. The taxes not having been paid on lots 25 and 26, they were sold to the state, and were duly certified to the state as delinquent lands. Later, in a proceeding brought under the authority of act 119 of the Acts of 1935, p. 318, this sale to the state was confirmed on April 17, 1939. The confirmation decree was not entered on that day, but was entered, *nunc pro tunc*, June 14, 1939. Appellants purchased the lots from the state and received from the Commissioner of State Lands a deed dated May 3, 1939.

This confirmation decree was rendered before Miss Wood learned that her lands had been returned delinquent, but she learned of the confirmation before the decree had been entered *nunc pro tunc*, and she employed counsel to redeem the lands. A formal tender of the taxes, penalty, interest, and costs for which the lots

had sold, with interest thereon to the date of tender, was made June 1, 1939, but the tender was refused. Thereupon, this suit was filed, and the summons which issued thereon was served June 3, 1939. The complaint alleged the facts herein stated, and it was shown by the depositions of Miss Wood and her cotenants that they were not advised of the delinquency of their lots and the sale thereof, or of the proceedings to confirm the sale thereof, until after the rendition of the confirmation decree.

The decree from which is this appeal granted the relief prayed, and the deed from the State Land Commissioner to appellants was ordered canceled upon the payment of the $73.74, the sum previously tendered, and so much of the confirmation decree as confirmed the sale of appellees' lots was vacated and set aside.

Appellees alleged that the tax sale was void for numerous reasons, and no attempt was made to sustain its validity. The insistence is that the confirmation decree cured its defects, and the right to redeem is, therefore, denied.

For the affirmance of this decree it is insisted that the Laffler survey was made without authority, and that the description of appellees' lots as lots 25 and 26 was in effect no description, and that the confirmation decree was void for this reason.

We do not concur in this view. It is obvious that the description of the lots as "Pt. South half Northwest quarter, . . .," is void. Many tax sales made under a similar description as "Pt." or "Part" have been held void for that insufficient description. No valid sale of the lots for taxes could ever have been made under that description. The survey appears to have been made by the county surveyor, and so far as the record before us shows to the contrary, it is good and the descriptions given the lots in the survey became their legal description.

Provision is made in § 13695, Pope's Digest, for the assessor to cause a survey to be made when necessary to obtain an accurate description of land for purposes of assessment for taxation.

Section 13697, Pope's Digest, provides that "It is made the duty of the recorder of every county to provide and keep in his office a record book to be entitled, 'Record of Surveyor's Plats and Notes,' in which he shall accurately record or make a fair copy and transcript of every plat and the notes accompanying the same returned to him by the county surveyor, as in this act is provided."

By the next section it is provided that "When a plat and notes accompanying the same of any section or part of section of land shall have been made, returned and recorded, as herein provided, a designation by number of a lot therein, either upon the assessment list, the tax book, the delinquent list, or in any tax receipt, certificate of sale, tax deed, or in any other deed or writing, shall be held and considered to refer to and as being intended to designate the subdivision of such section or part of section as is of the same number on such plat and the notes accompanying." Section 13698, Pope's Digest.

The case of *St. Louis-San Francisco Ry. Co.* v. *Sub-District No. 1 of Drainage District No. 11,* 179 Ark. 567, 17 S. W. 2d 299, involved the sufficiency of the description of certain lands which had been sold for delinquent drainage taxes. It was there said: "This assignment of error might be disposed of by saying that the motion for a new trial does not call to our attention any particular description which is said to be fatally defective, but of the descriptions discussed it may be said a number referred to private surveys. So far as the record before us shows to the contrary, these descriptions may be good and sufficient. The statute provides for the survey of lands not in cities or towns into subdivisions so that the descriptions employed in the government surveys may not always be essential. Provision is made in § 9932, Crawford & Moses' Digest (§ 13697, Pope's Digest), for a record book, to be entitled 'Record of Surveyors' Plats and Notes,' and by § 9933, Crawford & Moses' Digest (§ 13698, Pope's Digest), it is provided that assessments may be made with reference to these

surveys. See, also, § 9928, Crawford & Moses' Digest (§ 13695, Pope's Digest)."

The sections of the statute referred to permit the survey of territory lying within a city or town which, by addition or annexation, has become a part of the city or town, but which was not included in the survey whereby the city or town property was divided into lots and blocks.

It is argued also for the affirmance of the decree that appellees' taxes were not delinquent, and that the taxes should be treated as having been paid, for the reason that the amount of the taxes was remitted to the county clerk, with directions to pay the taxes due on appellees' lots, and not the taxes due on some other lot, and that it was the fault of that official, and not that of appellees, that the money was applied to the payment of taxes on lands which appellees did not own and on which they did not intend to pay.

We are cited to cases like that of *Knauff* v. *National Cooperage & Woodenware Co.*, 99 Ark. 137, 137 S. W. 823, where it was held that " 'If the taxpayer pays to the collector proper amount and appropriates the money paid to the land on which he desires to pay, and the collector applies it to the payment of taxes on other land, it is nevertheless an actual payment; or if the taxpayer designates on which land he desires to pay and pays the amount asked by the collector, and the collector omits from the receipt any portion of the land on which the taxes are to be paid, it is nevertheless equivalent to an actual payment.' (Citing cases.)"

But the tax collector here made no mistake. He issued a receipt for the taxes due on the land on which appellees, through their agent, the county clerk, offered to pay. That this error, not of the collector, but of the county clerk, did not constitute a payment of the taxes is settled by the opinion in the recent case of *Redfern* v. *Dalton, ante,* p. 359, 144 S. W. 2d 713.

However, we think a redemption was properly permitted under the provisions of § 9 of act 119 of the Acts of 1935, the act pursuant to which the confirmation

decree was rendered. It is there provided that "The owner of any lands embraced in the decree may, within one year from its rendition, have the same set aside in so far as it relates to the land of the petitioner by filing a verified motion in the chancery court that such person had no knowledge of the pendency of the suit, and setting up a meritorious defense to the complaint upon which the decree was rendered. The chancellor shall hear such defense according to the provisions of this act as though it had been presented at the term in which it was originally set for trial."

Here, the decree was rendered April 17, 1939, and entered, *nunc pro tunc,* June 14, 1939. Appellants' deed from the State Land Commissioner was dated May 3, 1939. The tender of the amount paid for this deed, with the fee for the deed, and the interest thereon, was made June 1, 1939. This last date was well within a year of the date of the confirmation decree. It was established without question that appellees were unaware of the pendency of the confirmation proceeding until after the rendition of the decree, and they proceeded with the greatest expedition thereafter.

It was held in the case of *Redfern* v. *Dalton, supra,* that the invalidity of a tax sale for any reason was a meritorious defense in a proceeding brought under the provisions of § 9 of act 119 of 1935 to redeem from the confirmation decree.

It is finally insisted that the suit filed by appellees was not an intervention within the meaning of § 9 of act 119. It can be nothing else, and was so treated in the court below. It is true an independent suit was brought, but in this suit the persons were made parties who were adversely interested, and we have no hesitancy in holding that this suit filed in the chancery court was "a verified motion in the chancery court," within the meaning of § 9 of act 119. It would put form before substance to hold otherwise. The proceeding here is not unlike the case of *Hirsch and Schuman* v. *Dabbs and Mivelaz,* 197 Ark. 756, 126 S. W. 2d 116. In that case the landowner sought to redeem from a confirmation decree rendered under the authority of act 119 of

the Acts of 1935. That case was tried as a suit between the owner and the purchaser from the state of the confirmed title, and is so reported.

Appellants had paid no taxes when the tender was made, and it is not shown that they have paid any since, and the tender covered the full amount paid by appellants for the tax deed, with the interest thereon.

We think the redemption was properly permitted, and the decree authorizing a redemption is affirmed.