INGRAM *v.* BLACKMON.

4-6430                                           152 S. W. 2d 315

Opinion delivered June 23, 1941.

*John L. Ingram,* for appellant.

*M. F. Elms,* for appellee.

SMITH, J. In 1918, the city of Stuttgart, by a proceeding the validity of which is not questioned, refunded its outstanding general indebtedness, by reissuing warrants against its general revenue fund in the amount of $36,922.50. These refunding warrants were payable serially, and in annual installments, and constituted what was known as the Elkins Loan. The maturities of these refunding warrants ran from September 1, 1918, to September 1, 1935, according to the ordinance which authorized their issuance. These warrants were paid as they matured from 1918 up to and including 1924, payments being made out of the "City General Purpose Fund."

Many of the counties, cities and incorporated towns of the state had, like the city of Stuttgart, become so indebted that they could not operate on a cash basis. To enable these governmental agencies to operate on a cash basis the electors of the state adopted Amendment No. 10 to the Constitution at the general election in 1924. This amendment was held to be self-executing. *Cumnock* v. *Little Rock,* 168 Ark. 777, 271 S. W. 466; *Lucas* v. *Reynolds,* 168 Ark. 1084, 272 S. W. 653; *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22; *Martin* v. *State, ex rel. Saline County,* 171 Ark. 576, 286 S. W. 873; *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S. W. 729.

The city of Stuttgart availed itself of the provisions of this amendment by levying a tax of two mills for debt retirement, in addition to the five mills which all cities and towns have the authority to levy. This 2-mill levy has been made continuously since 1925.

Notwithstanding this amendment was held to be self-executing, the General Assembly, at the ensuing 1925 session, passed an enabling act, numbered 210, entitled, "An Act to facilitate the funding of the debts of counties, cities, and incorporated towns."

The salient features of this act, so far as it relates to the questions here in issue, are: (1) That the city or town council shall, by ordinance, declare the total amount

of the municipal indebtedness. (2) That ordinance shall be published for the time and in the manner required by the act. Any property owner is given the right to question this ordinance and to have it reviewed. (3) If the ordinance is not successfully challenged, the municipality is given the right to issue negotiable interest bearing bonds. (4) Provision is made for the sale of these bonds, and the rate of interest they shall bear is fixed. (5) Before or after the issuance of bonds the city council shall levy a tax on the existing assessed values of the property within the corporate limits which will suffice to retire the bonds as they mature, provided, this tax shall not exceed three mills on the dollar of such assessed valuation. (6) The money derived from this tax shall be kept separate and devoted exclusively to debt retirement.

The city of Stuttgart did not issue new bonds, but treated the refunding warrants issued in 1918 as the debt to be retired with the proceeds of the 2-mill tax.

The council of the city of Stuttgart passed annually appropriate ordinances for the levy of this 2-mill tax, and certified the same to the quorum court which ordered its extension on the tax books. On November 5, 1934, the city council passed the following ordinance: "Be it resolved by the city council of the city of Stuttgart, in regular meeting assembled, that the quorum court of Arkansas county, Arkansas, be, and is hereby, directed to levy a tax of two mills upon all property located within the corporate limits of the city of Stuttgart for the purpose of retiring the outstanding indebtedness commonly known as the Elkins Loan."

Pursuant to this ordinance the 2-mill tax was levied and extended for the year 1934, but the taxes were not paid on lot 15, block 6, Bordfelt's Addition to the city of Stuttgart, and the lot was sold to the state. Thereafter, under the authority of act 119 of the Acts of 1935, p. 318, the state filed suit to confirm this sale, and a decree of confirmation was rendered October 3, 1938. Excluded from this decree were certain lots and lands, lot 15, block 6, being among that number. The reason for the exclusion of this and other lots and lands does not appear, but the cause was continued as to them, it being

recited that this was done by consent. However, on October 2, 1939, another decree was rendered in this confirmation proceeding, which included lot 15, block 6, so that the sale of the lot for the 1934 taxes was confirmed. On October 9, 1939, appellant Ingram purchased the lot from the state, and received the deed of the State Land Commissioner therefor. Later, Ingram filed suit in ejectment to recover possession of the lot.

An answer was filed, which alleged that the confirmation decree was ineffective to cure the tax sale, for the reason that the power to sell the lot was lacking, because the lot was sold for taxes not due thereon. The insistence is that there was no authority to levy the 2-mill tax for debt retirement, for the reason that the requirements of Enabling Act No. 210, *supra,* had not been complied with, and the case of *Fuller* v. *Wilkinson,* 198 Ark. 102, 128 S. W. 2d 251, and subsequent cases citing and following it, are relied upon to sustain this contention.

The cause was submitted to the court, and the relief prayed in appellant's complaint was denied, from which judgment is this appeal. The court found that there was no power to sell the lot, and that "the tax sale and all proceedings thereunder are void because included in the amount for which the lots and real estate here involved sold for the year 1934, namely, lot 15 of block 6 of Bordfelt's Addition to the city of Stuttgart, was a two (2) mill levy by the city of Stuttgart, in addition to the regular five (5) mill general fund levy, which was unauthorized by law, and that the inclusion of said amount in the sum for which said lot sold, rendered the sale thereof void, and as a consequence the tax deed by which the State Land Commissioner attempted to convey same to plaintiff was void and conveyed no title to plaintiff, and that the confirmation decree entered by the Arkansas county chancery court, Northern District, did not have the effect of curing the defect before mentioned in said sale, but was void insofar as it related to the lot and real estate herein described."

In the Fuller case, *supra,* a 3-mill tax for roads, which the electors of the county had not voted, was

extended upon the tax books and lands were sold for the nonpayment of this and other taxes. The sale was confirmed under act 119 of the Acts of 1935, *supra;* but that decree was held invalid, for the reason that there was lacking the power to sell the lands for the road tax which had not been voted.

Here, the 2-mill tax for debt retirement had been voted, and by the governmental agency having that authority. Whether the proceeds of this tax have been properly applied is a question which may not be inquired into in this collateral proceeding. Whether the power of the council to levy this tax was exercised in the manner provided by law is a question which might have been raised before the sale of the land for the nonpayment of taxes, or, later, in the confirmation proceeding. The final opportunity to raise that question was presented when the state asked confirmation of the tax sale. As has been said, the confirmation of the tax sale, so far as it affected lot 15, block 6, was, for some reason not stated, continued, and the confirmation decree, as affecting this lot, was not rendered until a year later. Here was the time and opportunity to show that there had been no valid exercise of the power to levy the 2-mill tax. The chancery court had the jurisdiction to determine this question of fact, and the rendition of the confirmation decree is the conclusive evidence of a finding that the power had been properly exercised.

The analogy between this case and the Fuller case, *supra,* fails in this respect. There, only the electors could vote the road tax, and they did not do so. Here, the city council had the power to vote the 2-mill tax, and it did so. Whether this power was exercised in the manner provided by law was a question which the chancery court had the jurisdiction to determine, and the confirmation decree is conclusive of that issue. Had the decree of confirmation in the Fuller case, *supra,* been held invalid because there were irregularities in the election at which the 3-mill road tax was voted, the analogy which appellee seeks to draw between that case and this, would be complete; but such was not the case. In that case there had been no exercise of the power to vote the tax; here,

there has been. The 2-mill tax was voted and levied by the council, which had that authority, and this action was duly certified to the quorum court.

It would appear, from the recitals of the first decree of confirmation, that the proceeding had assumed an adversary character, it being recited that the cause was continued by consent as to certain lands, lot 15, block 6, being among that number. But, whether this be true or not, the confirmation proceeding is conclusive of the issues which must be decided before the decree may be rendered. It was said in the case of *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970 (to quote a headnote) that "A decree confirming a tax title is conclusive against an absent claimant as well as against an intervener who contests petitioner's right, the proceeding being in the nature of one *in rem.*"

Here, there was not lacking the power to extend the 2-mill tax against the land, and the agency having that power exercised it. Whether this power had been exercised in the manner authorized by law was a question which should have been raised and determined in the confirmation proceeding. The answer interposed in this case constitutes a collateral attack on the decree of confirmation, and, in effect, asks a review of the decree of the chancery court confirming the tax title.

For the affirmance of the judgment from which is this appeal appellee cites and relies upon the case of *Sherrill* v. *Faulkner,* 200 Ark. 1006, 142 S. W. 2d 229. There, a confirmation decree rendered under act 119, *supra,* was vacated. But it appears that the landowner in that case availed himself of the provisions of § 9 of the act by appearing within one year after the date of the rendition of the decree, and set up facts showing the invalidity of the tax sale.

This appellee did not do. Moreover, in the Sherrill case, *supra,* the land had been sold for taxes, including a levy for the Crippled Children's Home and Hospital, and for other purposes, in excess of five mills, for the levy of which there was no authority in the law. That case was not one where the power had been improperly

exercised. It was, rather, a case where a power had been exercised which did not exist. In that case there was lacking, therefore, power to sell land for a tax unauthorized by law.

The purpose and effect of act 119 and the distinction between it and the earlier confirmation act 296 of the Acts of 1929, p. 1235, were fully discussed in the case of *Fuller* v. *Wilkinson, supra*. It was there said that the purpose and effect of act 119 was to cure all defects not relating to the power to sell. That holding has been reaffirmed and followed in a number of subsequent cases, the latest of these being the case of *Faulkner* v. *Binns, ante,* p. 457, 151 S. W. 2d 101, which cites intermediate cases.

Here, it may again be said that there was authority to levy the 2-mill tax for debt retirement, and that authority was exercised by the city council, clothed with that authority. Whether there were irregularities in the exercise of this power is a question which has been concluded by the decree confirming the sale.

It follows, therefore, that the judgment must be reversed, and the cause will be remanded for further proceedings in accordance with this opinion.