LUMSDEN *v.* ERSTINE.

4-7077                                    172 S. W. 2d 409

Opinion delivered June 7, 1943.

*John W. Moncrief,* for appellant.

*W. A. Leach,* for appellee.

McFADDIN, J. This cause involves an attack upon a tax sale and confirmation proceedings. The property (80 acres) was sold or forfeited to the state in 1930 for taxes of 1929 and was certified to the state in 1932. In 1936, this tract of 80 acres, along with other lands, was confirmed to the state in a confirmation proceeding under act 119 of 1935. In 1939, the appellees received their deed from the state.

The lands had forfeited in 1930 in the name of Missouri State Life Insurance Company as the owner; and in 1938 the appellant, Lumsden, obtained his deed by *mesne* conveyances from the said owner. In 1939, the appellant filed suit to cancel the appellee's deed, and made due tender, and alleged a number of defects in the tax sale of 1930, one of which was that the lands sold for an excessive amount of costs.

The appellees in answering, defended the tax sale and pleaded the confirmation decree of 1936, under act 119 of 1935, in bar of the appellant's suit. In the trial before the chancery court the appellees stipulated: "These defendants admit that the aggregate amount for which the lands here involved were sold for the taxes due for the year 1929 included costs which were five cents in excess of the total costs permitted to be charged."

From the decree for the defendants the plaintiff has appealed. Several questions are argued, but the matter of excessive costs is determinative of the case.

At the outset, we point out that act 423 of 1941 does not apply in this case because the confirmation decree herein was in 1936; and this court held in *Schuman v. Walthour*, 204 Ark. 634, 163 S. W. 2d 517: "We hold, therefore, that act 423 was not intended to and does not apply to confirmation decrees rendered prior to its passage, but only to those subsequently rendered."

Act 119 of 1935 has been before this court over a score of times. Reference is made to Shepard's Arkansas Citations for all the cases citing this act. Act 284 of 1937 and act 318 of 1939 contained amendments not touching the case at bar.

At the time of the confirmation decree, or within one year thereafter, many grounds of attack existed against the tax sale. Some cases involving attack within one year are: *Hirsch and Schuman v. Dabbs and Mivelaz*, 197 Ark. 756, 126 S. W. 2d 116; *Billert v. Phillips*, 198 Ark. 698, 130 S. W. 2d 715; *Holt v. Reagan*, 201 Ark. 1101, 148 S. W. 2d 155; *Lubeke v. Holtzendorff*, 203 Ark. 141, 157 S. W. 2d 770; *Hollaway v. Jordan*, 203 Ark. 216, 156 S. W. 2d 205; *Schuman v. Hughes*, 203 Ark. 395, 156 S. W. 2d 804; *Wilson v. Fraps*, 204 Ark. 444, 162 S. W. 2d 561; *Gottfried v. Johnson*, 204 Ark. 552, 163 S. W. 2d 162.

After the lapse of a year from the confirmation proceedings, all irregularities and defects are cured except those that go to the power to sell. Cases where irregularities and defects were so cured are: *Ingram v. Blackmon*, 202 Ark. 769, 152 S. W. 2d 315; *Kirk v. Ellis*, 192 Ark. 587, 93 S. W. 2d 139; *Berry v. Davidson*, 199 Ark. 276, 133 S. W. 2d 442; *Redfern v. Dalton*, 201 Ark. 359, 144 S. W. 2d 713; *Faulkner v. Binns, Trustee*, 202 Ark. 457, 151 S. W. 2d 101.

In the case at bar we are considering an attack made more than one year after the confirmation decree and going to the power to sell. Some cases involving that situation are: *Powell v. Coggins*, 204 Ark. 739, 164 S. W. 2d 891; *Fuller v. Wilkinson*, 198 Ark. 102, 128 S. W. 2d

251; *Dansby* v. *Weeks,* 199 Ark. 497, 135 S. W. 2d 62; *Kaplan* v. *Scherer, ante,* p. 554, 169 S. W. 2d 660.

In *Fuller* v. *Wilkinson,* 198 Ark. 102, 128 S. W. 2d 251, it was held that act 119 of 1935 was not a statute of limitations, but a curative statute intended to cure "any and all defects in the sale not related to the *power to sell."* In *Faulkner* v. *Binns, Trustee,* 202 Ark. 457, 151 S. W. 2d 101, it was again held that a confirmation under act 119 of 1935, and a lapse of one year thereafter cuts off all defects in a tax sale "where the *power to sell* exists."

In both cases it was recognized and declared that after the confirmation and the lapse of a year (it might be two years for persons out of the jurisdiction of the United States by reason of the amendment of 1939) all defects in the tax sale are cut off except those defects that go to the "power to sell." So, in order to see what defects can successfully be urged after the confirmation and the lapse of a year, we have to see what defects defeat the power to sell; and this involves a study of (a) what is the power to sell; and (b) what defects defeat the power to sell.

The "power to sell" presupposes a valid statute, and a valid procedure thereunder. In Black on Tax Titles (2d Edition) § 152, in discussing "Foundations of the power to sell land," it is stated: "When we remember the character of inviolability which all just and enlightened governments impute to private property in land, and the sacred regard for such ownership which is manifested in the genius of the common law and the spirit and letter of our constitutions, it is evident that no other solution of the question will bear the test of searching inquiry. The state, therefore, lays a tax upon land, . . . and the same authority gives it power to collect the burden thus imposed. . . . Yet this right, like all others appertaining to the state, is not without checks and limitations. The seizure and sale must not be arbitrary or unwarranted. Sovereignty imports no power to deprive the citizen of his property except in pursuance of law and for a lawful demand. Where just

and legal condemnation ends, confiscation begins. Hence the tax itself must be lawful, and be legally assessed and levied; the land must be such as is liable to contribute; and the owner must be fairly in default. Moreover, the statutes must prescribe regular and orderly processes, and these must be followed with scrupulous exactness by those who are charged with them, and every reasonable opportunity must be afforded to the taxpayer to protect himself from illegal exaction or to save himself from the consequences of his inadvertence or neglect. This being understood, we are entitled to say that laws providing for the sale of lands for nonpayment of taxes are not unconstitutional.''

And to the same general effect, see Cooley on Taxation (4th Edition) §§ 1381 and 1382. From these authorities, it may reasonably be said that the ''power to sell'' requires the concurrent existence of certain essentials, such as (a) a valid law; (b) a lawful tax; (c) legally assessed and levied; (d) on land liable to tax; and (e) the owner fairly in default.

We proceed then to consideration of what specific defects defeat the power to sell; and Black on Tax Titles (2d Edition) lists at least five specific defects, any one of which defeats the power to sell. These are:

I. A void description of the property defeats the power to sell. As Mr. Black says in § 172: ''When tax proceedings are taken against the land itself, with no personal notice to the owner, it is generally agreed that the collector's notice or petition for judgment must contain a reasonably certain description of the land, such as to admit of its identification. And this requirement is jurisdictional, and goes to the validity of the judgment.''

This court has held that a void description defeats the power to sell, and confirmation proceedings cannot cure this defect. *Dansby* v. *Weeks*, 199 Ark. 497, 135 S. W. 2d 62, and *Powell* v. *Coggins*, 204 Ark. 739, 164 S. W. 2d 891.

II. A void tax defeats the power to sell; and if any part of the tax is illegal then the entire power to

sell is defeated. Mr. Black, in § 230, of his work, says: "One of the most important principles announced by the authorities under the general rule above stated is this: If land is sold for taxes, a part of which are legal and a part illegal, the sale is void *in toto*. Thus it is said: 'Whenever a tax is invalid because of excess of authority or because the requisites in tax proceedings which the law has provided for the protection of the taxpayer are not complied with, any sale of the property based upon it will be void also. . . . And if property is sold for the satisfaction of several taxes anyone of which is unauthorized, or for any reason illegal, the sale is altogether void.' Cooley's Constitutional Limitation, 521. . . . It is also to be observed that it is entirely immaterial how small may be the illegal element that enters into the demand."

It will be observed that Mr. Black quotes Judge Cooley as additional authority. This court has held that the inclusion of an illegal tax defeats the power to sell, and confirmation proceedings cannot cure the defect. Some such cases are: *Fuller* v. *Wilkinson,* 198 Ark. 102, 128 S. W. 2d 251; *Smart* v. *Alexander,* 201 Ark. 211, 144 S. W. 2d 25; *Sherrill* v. *Faulkner,* 200 Ark. 1006, 142 S. W. 2d 129.

III. If the property is not subject to taxation, then there is no power to sell. In § 267 of Black on Taxation, it is stated that there is no power to sell public property and other property not subject to taxation. This court has so held. *Kaplan* v. *Scherer, ante,* p. 554, 169 S. W. 2d 660; *Winn* v. *Little Rock,* 165 Ark. 11, 262 S. W. 988.

IV. Excessive charges defeat the power to sell. In § 232 of Black on Tax Titles, the author quotes Cooley on Taxation: " 'The statutory power is a power to sell for lawful taxes and lawful expenses, and if it is exceeded by including unlawful items of either class, the power is exceeded, and its exercise is invalid *in toto,* from the manifest impossibility of saving the sale in part, when the invalidity extends to the whole.' Cooley on Taxation, 497."

Section 235 of Black on Tax Titles says: "But just as soon as the costs or fees thus included are found to exceed the statutory limit, or to be unwarranted, this will vitiate the sale. For an excessive charge in this respect is evidently as fatal to the proceedings as if it had arisen in consequence of the illegal enlargement of the tax itself, or from any other cause," and Cooley on Taxation (4th Edition) § 1392, says: "And a tax sale is made void if the tax is made excessive by adding an illegal percentage or item of interest, or illegal or excessive fees or charges."

The question of excessive charges is the question in the case at bar; and we will revert to this point shortly.

V. Black on Tax Titles, § 156, states that prior payment destroys and defeats the power to sell. There is no need for us to go into that question here and review the Arkansas authorities because whatever may have been the trend of our authorities in this state heretofore on that question, it is specifically stated in act 423 of 1941: "Provided, nothing in this act shall prevent any person attacking such decree at any time on the grounds that taxes have actually been paid."

Having discussed the power to sell and listed some of the specific defects which the authorities agree will defeat the power to sell, we revert now to the fourth of those defects mentioned, to-wit: excessive charges, because that is the attack levied at the sale in this case.

It has been recognized in Arkansas for many, many years that an excessive charge defeats the power to sell. This is no new law. In *Goodrum* v. *Ayers,* 56 Ark. 93, 19 S. W. 97, Justice HEMINGWAY, speaking for the court concerning an excessive charge of 25 cents, said: "As such fee was unlawfully embraced in the amount for which the several tracts were sold, it follows that the sale was unauthorized and void. The amount of the illegal excess is small, but according to the decisions of this court and the general current of authorities elsewhere, it is sufficient to invalidate the sale. Black on Tax Titles, §§ 98, 99."

In *Darter* v. *Houser,* 63 Ark. 475, 39 S. W. 358, Chief Justice BUNN, in speaking of an excess charge of 25 cents for a certificate of purchase, said: "Having been included in this instance as a part of the cost of sale, it was an overcharge, and, under the rulings in the case cited, the sale and subsequent proceedings thereunder are made void."

Justice HUGHES, in *Salinger* v. *Gunn,* 61 Ark. 414, 33 S. W. 959, said: "At any rate, it appears that each tract was sold for the 25 cents too much mosts. Under the decision in *Goodrum* v. *Ayers,* 56 Ark. 93, 19 S. W. 97, this is fatal to the tax sale."

Justice BATTLE, in *Muskegon Lbr. Co.* v. *Brown,* 66 Ark. 539, 51 S. W. 1056, said: "The forfeiture in 1872 was void because the collector had no authority to sell lands delinquent for taxes for any cost except the cost of advertising."

Justice BATTLE, in *Kirker* v. *Daniels,* 73 Ark. 263, 83 S. W. 912, said: "The tax sale was void because the amount for which the land sold included the fee of 25 cents for the certificate of purchase; there being at that time no authority to sell the land for an amount including such fee."

Some may say that the five cents excess in the case at bar is too small to upset a tax sale; but this court has held otherwise. In *Cooper* v. *Freeman Lbr. Co.,* 61 Ark. 36, 31 S. W. 981, 32 S. W. 494, this court, speaking through Justice HUGHES, said: "The smallness of the amount of the excess over the amount due does not, in a tax sale, affect the question, as the maxim, '*de minimis non curat lex,*' does not apply to tax sales. The provisions of the law made for the protection and benefit of the taxpayer are mandatory."

And in § 233 of Black on Tax Titles cases from many jurisdictions are cited to show that the smallness of the excess cannot make legal the void sale. If the excess is as much as one cent, then the power to sell is vitiated. In the case at bar it was stipulated that the excess was five cents. If a citizens' property can be taken from him by the sovereign for an excess of five cents, then by

the same token it can be taken from him for an excess of five million dollars. If a citizen's rights and property are to be safe, then they must be kept safe against little exactions as well as against large encroachments. The constant drip of water will wear away the largest stone; and if the sovereign by constant inroads in small things is allowed to take the citizen's property, then the rights of private ownership are gone to the realm of Limbo. Courts are to protect the rights of citizens—that is one of the reasons for the existence of judicial tribunals.

But it has been contended that even if the power to sell was defeated by reason of the excessive charge in the tax sale of 1930, still the confirmation proceedings in 1936 cured the sale of any such defect. We revert to the language of *Faulkner* v. *Binns, Trustee,* and *Fuller* v. *Wilkinson* to show that the confirmation can cure all defects *except those that relate to the power to sell.* The power to sell is defeated by the excessive charge; so the confirmation proceedings could not cure the defect of excessive charge, because the excessive charge defeated the power to sell. To say that the confirmation proceedings in 1936 cured the illegal taking of property for an excessive charge in 1930 is the same thing as to say that the breath of life can be breathed back into a corpse after a lapse of years.

It follows, therefore, that by reason of the excessive charge for which the property was sold in this case, the power to sell was defeated, and, therefore, the confirmation proceedings could not make the sale valid; and that the plaintiff was entitled to have his tender accepted and the lower court erred in failing to so hold. For the error indicated, the cause is reversed and remanded to the chancery court with directions to proceed in accordance with this opinion.

SMITH, J., (dissenting). The state government must function, but, to do so, it must have the necessary revenue. For many years these revenues were derived chiefly from the ad valorem taxes assessed against and collected upon property both real and personal. Later,

and from time to time, additional sources of revenue have been provided, but the ad valorem tax remains a sub-. stantial and essential part of the state's revenues.

The method provided by law for the enforcement of the payment of the taxes on real estate is to sell the land on which the owner had failed, or refused, to pay the delinquent taxes. The reluctance of the courts to see one lose his land for the taxes due thereon was such that the policy of the courts was to hold these sales void for an innumerable number of reasons, many more or less frivolous, but the policy was fixed to require an exact and literal compliance with the law, otherwise the sale was held to be invalid. In this connection it may be said that the many opinions on this subject have used the words "void" and "voidable" interchangeably. Possibly the most frequent ground on which tax sales have been held to be void was that excessive costs of sale had been charged. This was, of course, a substantial and not a frivolous reason.

Tax sales were so uniformly held bad that they ceased to be seriously regarded by many persons who paid taxes only when convenient to do so, if at all. The late Justice BAKER, in the opinion in the case of *Berry* v. *Davidson*, 199 Ark. 276, 133 S. W. 2d 442, adverted to this fact and, after stating "that it was thought by many that people need not pay taxes if they were willing to meet the worry and expenses of litigation in regard thereto" he proceeded to review the legislation leading to the enactment of Act 119 of the Acts of 1935. He there, for the court, reaffirmed the holding in the case of *Fuller* v. *Wilkinson*, 198 Ark. 102, 128 S. W. 2d 251, the reaffirmation being to the effect that decrees of confirmation rendered in accordance with Act 119, *supra,* were impervious to attack, save only in cases where there was lacking the power to sell for the taxes.

When is the power to sell lacking? This lack of power exists in cases like *Fuller* v. *Wilkinson, supra,* where the land was sold for a non-existent tax. In other words, it is essential that there be a tax for which the land may be sold.

Another class of cases in which the power to sell is lacking is where the property sold was not subject to taxation, or was exempt from taxation under § 5 of art. XVI of the Constitution. *Winn* v. *Little Rock,* 165 Ark. 11, 262 S. W. 988. In that case a cemetery had been sold for taxes.

In all these cases, that is, where the power to sell is lacking, it is held that confirmation does not cure the tax sale. This for the reason that the court rendering the confirmation decree lacked the jurisdiction to confirm a sale made in a case where the power to sell was lacking.

But in all other cases, that is, cases in which the power to sell existed, however irregularly that power may have been exercised, the confirmation decree cured the sale. Such was and is the purpose and effect of our confirmation statutes and, if this be not the effect of a confirmation decree, then the exercise of the power conferred by the confirmation statutes is futile.

After pointing out in the case of *Fuller* v. *Wilkinson, supra,* that the confirmation Act 296, passed in 1929, cured only "informalities" and "irregularities," it was said: "Now, Act 119 is not thus restricted, and we think the effect of confirmation decrees, rendered pursuant to its provisions, is to cure all tax sales where there was not lacking power to sell, that is, all sales for taxes which were due and had not been paid."

In the case of *Berry* v. *Davidson, supra,* Justice BAKER, for the court, said: "If there are any taxes levied or assessed against the land, however defectively that may have been done, and when the taxes shall not have been paid, the state has the power to sell."

In the case of *Commercial National Bank* v. *Cole,* 200 Ark. 212, 138 S. W. 2d 794, a headnote, fully sustained by the text of that opinion which it summarizes, reads as follows: "Where a valid tax has been imposed and has not been paid, the power to sell exists."

These holdings were reaffirmed in the case of *Redfern* v. *Dalton,* 201 Ark. 359, 144 S. W. 2d 713, where (quoting a headnote) it was said: "The power to sell for

nonpayment of taxes exists when a valid tax has been imposed and has not been paid."

These holdings were reaffirmed in the case of *Faulkner* v. *Binns*, 202 Ark. 457, 151 S. W. 2d 101, in which case a headnote reads as follows: "The effect of a confirmation decree rendered pursuant to. the provisions of Act 119 of 1935 is to cure all tax sales where there was not lacking the power to sell, that is, all sales for taxes which were due and had not been paid."

These cases were reviewed and these holdings re-affirmed in the case of *Schuman* v. *Walthour*, 204 Ark. 634, 163 S. W. 2d 517, with the qualifications, more apparent than real, that a confirmation decree is not *res judicata* of the validity of the sale where the land was sold for a tax in excess of the constitutional limit.

That holding, however, is not out of line with the other cases just cited, as its effect is that a confirmation decree is not impervious where the land was sold for a tax not due, and a tax in excess of the constitutional limit is, of course, a tax not due.

The effect of these cases may be summarized as follows: to constitute power to sell there must be a law imposing a valid tax upon property subject to the tax, which tax has not been paid. When these conditions exist the power to sell exists and a confirmation of such a sale under the provisions of § 9 of Act 119 of the Acts of 1935 vests in the State a title which "shall be considered as confirmed and complete in the State forever" with certain exceptions not present in this case.

Another exception, also more apparent than real, where the confirmation decree does not vest a title "complete in the State forever" is where the description of the land is so indefinite that it describes nothing. In other words, something must be sold and the property sold must be so described that it may be identified. *Dansby* v. *Weeks,* 199 Ark. 497, 135 S. W. 2d 62.

Now, as has been said, this court has held that many and various irregularities invalidate tax sales and one of the most common irregularities is the charging of excessive costs.

The majority opinion cites text writers who say uniformly that charging excessive costs renders the sale invalid and the rule *de minimis* does not apply, provided the excess charged exceeds the smallest coin we have in circulation. *Kinney* v. *Duggan,* 199 Ark. 396, 133 S. W. 2d 878.

It was unnecessary to consult the text writers on this subject, as our own cases have definitely and repeatedly held that charging excessive costs renders the tax sale invalid, and the majority opinion cites some of these cases, and there are others. But the text writers and our own cases were referring to sales not confirmed and no text is cited, or opinion found, by the majority, which holds that charging excessive costs is a defect which confirmation will not cure. Of course, charging excessive costs invalidated the sale and it is for that reason that confirmation is necessary, and the effect of the confirmation is to cure this defect. If this is not true, then many decrees which have confirmed invalid tax sales are themselves rendered void and of no effect.

The power to charge costs in the tax sales is not lacking, but is expressly conferred by statute. There has been some uncertainty, and a lack of uniformity, in the amount of costs chargeable in the various counties; and, in many instances, this power has been abused by charging more costs than the law allowed, but in all cases the power to charge costs was existent and was never lacking.

The case of charging excessive costs is the mere irregular exercise of a power, and is not the exercise of a power which is non-existent, as is the case of selling land for a non-existent tax, or of selling property so defectively described that it may not be identified, or of selling property exempt from taxation, as a graveyard, or otherwise exempt from taxation under the provisions of § 5 of art. XVI of the Constitution.

Now, the text writers say, and the cases hold somewhat loosely, that there is no power to sell lands on which the taxes had been paid. Certainly any court would hold, as this court has frequently held, that a sale for taxes previously paid was void, but the distinction which this

court has pointed out is that a sale for taxes already paid is not a jurisdictional defect, as is the sale of land not subject to the tax, or for a non-existent tax, or under a description which is void and describes nothing.

The first of these cases is that of *Wallace* v. *Brown,* 22 Ark. 118, 76 Am. Dec. 421, in which case the headnotes read as follows:

"If a collector proceeds to sell land after the taxes charged upon it have been paid, the sale is without power and a fraud upon the owner's rights; and this fraud enters into and vitiates a decree of confirmation under the statute; and this court would be slow to hold that the owner, having no actual notice of the proceedings to confirm, could not vacate the decree and cancel the deed of the purchaser in a direct and appropriate proceeding for that purpose:

"But when such a decree is offered in evidence in a collateral suit, the owner of the land will not be permitted to go behind the decree, introduce evidence of the payment of the taxes before the sale, and for that reason cause the decree to be treated as null and void."

Now, the present suit is a collateral attack upon the confirmation decree and any matter which was adjudged in that decree, or might have been, is concluded by it, as the court had the jurisdiction to decide the question.

The holding in this case of *Wallace* v. *Brown, supra,* as reflected in the headnotes above copied, was modified by the opinion in the case of *Worthen* v. *Ratcliffe,* 42 Ark. 330, where it was said: "But, in truth, every question with respect to the assessment of the land in controversy, or the non-payment of taxes, or the regularity of the proceedings of the sheriff and collector, is concluded by that decree; provided the court which rendered it had jurisdiction of the petition, and provided the decree was not obtained by a fraudulent misrepresentation or concealment of facts. *Thomas* v. *Lawson,* 21 How. 331, 16 L. Ed. 82; *Buckingham* v. *Hallett,* 24 Ark. 519."

The following cases are to the same effect: *Worthen* v. *Ratcliffe,* 42 Ark. 330; *Williamson* v. *Mimms,* 49 Ark. 336, 5 S. W. 320; *McCarter* v. *Neil,* 50 Ark. 188, 6 S. W.

731; *Boehm* v. *Botsford,* 52 Ark. 400, 12 S. W. 786; *Burcham* v. *Terry,* 55 Ark. 398, 18 S. W. 458, 29 Am. St. Rep. 42; *Lonergan* v. *Baber,* 59 Ark. 15, 26 S. W. 13; *Martin* v. *Hawkins,* 62 Ark. 421, 35 S. W. 1104; *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983; *Porter* v. *Dooley,* 66 Ark. 1, 49 S. W. 1083.

The confirmation decree imports the finding that the taxes had not been paid, as this is the very basis of the confirmation suit. So also is the irregularity of the proceedings of the officers conducting the tax sale in charging excessive costs. The costs charged is a matter of record apparent from the record and is not concealed, and the question whether excessive costs were charged is one of those questions of fact concluded by the decree of confirmation, because the court rendering the decree had the jurisdiction to determine the questions. Not so with a void description, which is nothing, and not so with a sale for a non-existent tax, or of exempt property, which would not be rendered in those cases except that only by a fraudulent misrepresentation, or the concealment of facts, would a decree be rendered in the class of cases last mentioned; but the charging of excessive costs was only an irregularity and not a jurisdictional defect relating to the power to sell. The land is sold for the tax and the cost is a mere incident of the sale, and has no relation to the power to sell for the taxes.

We conclude, therefore, that the court in rendering the confirmation decree had the jurisdiction to determine whether excessive costs of sale were charged, and the rendition of the confirmation decree is conclusive that excessive costs were not charged, this being a question of fact which the court had the jurisdiction to determine.

Act 423 of the Acts of 1941, p. 1227, furnishes no support to the majority opinion. It does provide that nothing in the confirmation act shall prevent any person attacking the confirmation decree, at any time, on the ground that the taxes have actually been paid. The effect of this provision is to amend the confirmation act by permitting the showing to be made, at any time, that the taxes had been paid. Cases herein above cited are to the effect that a confirmation decree may not be collaterally

attacked upon the ground that the taxes for which the land was sold had in fact been paid. Act 423 now permits this attack, but it is itself a recognition of the fact that the power exists to confirm a sale although the taxes had been paid, but, notwithstanding that fact, the act permits the attack, which but for the Act 423, *supra*, could not be made. However, the majority opinion points out that it was held in the case of *Schuman* v. *Walthour*, 204 Ark. 634, 163 S. W. 2d 517, that this act was prospective, and not retroactive, and did not apply to confirmation decrees rendered prior to its passage, as was the confirmation decree here attacked.

I, therefore, dissent from the holding of the majority that the charge of excessive costs rendered the confirmation decree invalid.

I am authorized to say that the Chief Justice and Mr. Justice Holt concur in these views.